# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NO. 4:09-CR-57 |
| | § | Judge Folsom |
| DAXO MORALES-ROSALES (38) | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion to Suppress Evidence (Dkt. #481). Having considered the relevant pleadings, and argument and testimony given at the January 12, 2010 hearing, the Court is of the opinion that Defendant's motion should be granted.

## BACKGROUND

Defendant is charged with conspiracy to transport and harbor illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). Defendant seeks to suppress any and all evidence obtained during the January 21, 2008 stop of Defendant's vehicle.

The Government offered the testimony of Senior Patrol Agent Robert Deville ("Agent Deville") of the United States Border Patrol. Agent Deville testified that in January of 2008 he participated in "Operation Uniforce," which was a Border Patrol operation targeting over-the-road smuggling of illegal aliens. On January 21, 2008, officers and agents, as part of Operation Uniforce, concentrated surveillance on Interstate 20, around the Jackson, Mississippi, area. According to Agent Deville, he could only pull over vehicles for immigration violations and had no authority to pull over vehicles for traffic violations. The operation was concentrated in the area along Interstate 20 near Jackson, Mississippi, because agents had arrested human smugglers in the area before. The operation lasted at least a week, and many vehicles were pulled over. In addition to the arrest of

Defendant, the operation led to the discovery of at least two vehicles that were smuggling illegal aliens. Agent Deville believed that this area along I-20 is used for smuggling illegal aliens based upon his own experience and based upon Immigration and Customs Enforcement ("ICE") intelligence reports.

On January 21, 2008, at approximately 5:50 A.M., Agent Deville spotted an "extended van" traveling east on Interstate 20. The van was a "panel-style van with blacked-out windows" and "extended in length." The van appeared "heavily laden." The van responded in "slow motion" as it moved up and down and side to side on the roadway. Agent Deville stated that other vehicles containing illegal aliens that he stopped in the past moved and bounced in a similar fashion. The van had out-of-state license plates, from Texas. Based upon his experience and training, Agent Deville determined that the van fit the description of vehicles used in human trafficking, and he began to follow the van in his vehicle. Agent Deville followed the van for approximately five miles.

Agent Deville pulled his vehicle directly even with the driver's side of the van because he wanted to "see how they responded" to seeing his Tahoe, which was clearly marked Border Patrol and had lights on top. Defendant, the driver of the van, did not acknowledge Agent Deville's vehicle in any way. Defendant remained "rigid and stiff" with both hands on the wheel while staring directly ahead at the roadway. Based upon his experience and training, this type of behavior is indicative of illegal smuggling. Agent Deville stated that, while driving next to the vehicle, he could not tell if the driver was Hispanic or Mexican. Based upon a totality of what he observed, Agent Deville proceeded to pull over Defendant's van.

Defendant immediately pulled to the side of the road when Agent Deville turned on his vehicle's lights and siren. Agent Deville approached the van on the passenger side in order to avoid

2

the danger of the oncoming traffic. He identified himself to Defendant first in English and then in Spanish, of which he feels he has a functional knowledge. He asked Defendant what country he was from and Defendant replied Mexico. Defendant stated that he did not have any documentation showing that his immigration status was legal. Almost immediately after approaching the vehicle, Agent Deville noticed that the van had no seats and many people were sitting or lying in the back of the van. He later learned that nineteen individuals, besides Defendant, were in the van. Based upon his experience and training, using a van in this manner is indicative of trafficking in illegal aliens. At this time, Agent Deville contacted other officers and Defendant was placed under arrest. Agent Deville testified that no one factor convinced him to pull over Defendant's van, but he based his decision on the many factors pointing toward the occurrence of trafficking illegal aliens.

The Government also offered the testimony of Special Agent Daniel Padilla ("Agent Padilla") with ICE. Agent Padilla participated in a surveillance operation during 2007. At that time he participated in surveillance of Defendant, whose identity was found to be Daxo Morales-Rosales. Defendant was pulled over at that time and used the same forms of identification as those used in this case. According to Agent Padilla, he has no doubt that Defendant is, in fact, Daxo Morales-Rosales.

The Defendant offered the testimony of Kelly Audas ("Audas"). Audus testified that she currently works as a paralegal. In the past she worked as a rental agent for Enterprise Rent-A-Car, where she frequently rented "extended vans" to customers. The vans could be configured to seat fifteen people in most cases and the seats could be entirely removed. The vans came with or without back windows. Normally the cargo vans did not have windows. The fifteen-passenger vans usually had dark tinted windows. Audus never rented a van to Defendant, to her knowledge.

3

## ANALYSIS

"To temporarily detain a vehicle for investigatory purposes, a Border Patrol agent on roving patrol must be aware of specific articulable facts together with rational inferences from those facts, that warrant a reasonable suspicion that the vehicle is involved in illegal activities, such as transporting undocumented immigrants." *United States v. Rangel-Portillo*, 586 F.3d 376, 379 (5th Cir. 2009)(citing *United States v. Chavez-Chavez*, 205 F.3d 145, 147 (5th Cir. 2000)). In considering whether Agent Deville had reasonable suspicion to stop Defendant's vehicle, "[n]o single factor is determinative; the totality of the particular circumstances known to the agent[ ] [is] examined when evaluating the reasonableness of a roving border patrol stop." *Id*. (citing *United States v. Hernandez*, 477 F.3d 210, 213 (5th Cir. 2007)). "Factors that may be considered include: (1) the characteristics of the area in which the vehicle is encountered; (2) the arresting agent's previous experience with criminal activity; (3) the area's proximity to the border; (4) the usual traffic patterns on the road; (5) information about recent illegal trafficking in aliens or narcotics in the area; (6) the appearance of the vehicle; (7) the driver's behavior; and, (8) the passengers' number, appearance and behavior." *Id*. "No single factor is dispositive, and each case must be examined based on the totality of the circumstances known to the agents at the time of the stop and their experience in evaluating such circumstances." *Id*. (citing *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009)).

In making reasonable-suspicion determinations, the Court "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arivizu*, 534 U.S. 266, 273 (2002). "This process allows officers to draw on their own experience and specialized training to make inferences

from and deductions about the cumulative information available to them that might well elude an untrained person." *Id*. "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id*. at 274.

The Government argues that Agent Deville, an experienced Border Patrol Agent, saw an individual driving an "extended" van with one passenger. Neither the driver nor the passenger would acknowledge Agent Deville's patrol vehicle, both were stoic, and both faced forward when he drove next to them. The van had dark-tinted windows and was riding low as if under a heavy load. The van was traveling on an interstate highway known to be used by smugglers. According to the Government, these facts establish a reasonable suspicion to pull over the van. The Court disagrees.

The Government has not carried its burden. The greater weight of the evidence supports a finding that these specific facts, and the rational inferences that can be drawn therefrom, would not reasonably lead an agent to suspect that the occupants of the van were involved in the activity of transporting illegal aliens. In this case there is no proximity to the border. *See United States v. Orozco*, 191 F.3d 578, 581 (5th Cir. 1999) ("a car traveling more than fifty miles from the border is usually viewed as being too far from the border to support an inference that it originated its journey there"). Therefore, the Court must examine the remaining factors or facts carefully. *Id*. at 582 (when the stop does not occur in close proximity to the border, facts offered by the government to support a reasonable suspicion will be examined "most carefully").

Here, the vehicle was traveling along Interstate 20 during the early-morning hours, which only very slightly favors the Government. However, many law-abiding people travel this stretch of highway each day. These facts are not inconsistent with activities of persons engaged in lawful

5

business and do not necessarily indicate criminal activity.

Agent Deville's experience in detecting the smuggling of illegal aliens does somewhat weigh in favor of the Government. Agent Deville testified that he is familiar with this area of Interstate 20 and is well trained and experienced in alien smuggling in general. However, the Court notes that Agent Deville's belief that this section of Interstate 20 is a smuggling route, does not alone establish reasonable suspicion absent other contributing factors. *United States v. Morales*, 191 F.3d 602, 604-05 (5th Cir. 1999); *See, e.g. United States v. Hernandez*, 477 F.3d 210, 215 (5th Cir. 2007) (finding reasonable suspicion where, in a notorious smuggling route, the agent received a tip that provided the color, number of vehicles, and type of vehicles the agent stopped).

With regard to the behavior of the driver and passenger, Agent Deville testified that the driver stared straight ahead and would not acknowledge his presence. The Fifth Circuit, however, has held that "[w]hether a driver looks at an officer or not should not be accorded much weight." *United States v. Rangel-Portillo*, 586 F.3d 376, 381 (5th Cir. 2009) (citations omitted). There was no evidence of erratic driving, which the Fifth Circuit has considered a factor that is favorable in establishing reasonable suspicion. *Id*. at 382. Therefore, the Court attaches little weight to the behavior of the driver and passenger.

With regard to the van appearing heavily laden, this factor favors the Government. However, any number of legitimate items could have been located in the van to give it the appearance that it was overloaded or riding low. *See United States v. Chavez-Chavez*, 205 F.3d 145, 148 (5th Cir. 2000) ("A factual condition that is consistent with alien smuggling does not provide reasonable suspicion if that condition also occurs even more frequently in the law-abiding public."); *Morales*, 191 F.3d 602, 607 (5th Cir. 1999) (finding reasonable suspicion where, among other factors, the

6

vehicle defendant was driving "appeared to be heavily loaded").[1]  However, there were no unusual aspects of the van, outside of Agent Deville stating that the van had tinted windows, which the Court does not believe is particularly unusual.  *See Chavez-Chavez*, 205 F.3d at 149 (finding reasonable suspicion where "[t]he agents testified that the van appeared to have a modified suspension to prevent it from sagging, which is common in vehicles used to transport illegal aliens").

The Court finds that the agent in this case did not have specific articulable facts, together with rational inferences from those facts, to reasonably warrant suspicion that the van contained aliens who may be illegally in this country.  Here, the agent observed a heavily loaded van with dark tinted windows, traveling on an interstate highway far away from the border, driven by a driver that stared directly ahead with two hands on the wheel.  What is important in this case is "not what is found in the record, but rather...what is missing from the record."  *Rangel-Portillo*, 586 F.3d at 382. There is no evidence of a tip from a confidential informant, erratic driving, unusual physical characteristics of the vehicle, or any unusual or suspicious behavior by the occupants of the vehicle. *See, e.g. United States v. Alvarado*, 635 F.Supp. 2d 586 (W.D. Tex. 2009) (reasonable suspicion did not exist where Border Patrol agent stopped vehicle away from the border, the driver and passenger appeared stoic, neither driver nor passenger appeared unkempt, many legitimate items could make a vehicle "ride low," and there were no unusual characteristics of the vehicle, no tips about illegal trafficking in the area).  Therefore, the Court recommends that the motion to suppress be granted.

---

[1] In *Morales*, there were factors present, in addition to the vehicle being heavily loaded, which are not present in this case.  For example, the tires of the truck were underinflated, the truck bed had a fiberglass cover, the driver did a "doubletake" when he passed the agent, the Hispanic appearance of the driver did not fit the non-Hispanic surname of the registration, and the driver paid close attention to the agent's vehicle through the rearview mirror causing him to swerve across the center line.  *See Morales*, 191 F.3d at 605.

## RECOMMENDATION

The Court recommends that Defendant's Motion to Suppress (Dkt. #481) be GRANTED.

Upon agreement of the parties, within five (5) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within five days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 23rd day of February, 2010.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE